## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| **MIRACLE ANN GREATHOUSE,** | § | |
| **Individually and as Administratrix of the** | § | |
| **ESTATE OF FRANKLIN BROOKS** | § | |
| **GREATHOUSE, DECEASED** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **SOUTHWESTERN CORRECTIONAL, LLC** | § | **JURY TRIAL DEMANDED** |
| **d/b/a LASALLE CORRECTIONS, LLC and** | § | |
| **LASALLE SOUTHWEST CORRECTIONS;** | § | |
| **LASALLE MANAGEMENT COMPANY, LLC;** | § | |
| **BOWIE COUNTY, TEXAS;** | § | |
| **CITY OF TEXARKANA, TEXAS;** | § | |
| **JAMES MCCORMICK, Individually;** | § | |
| **MICHELLE ARNOLD, Individually;** | § | |
| **TIFFANY HILL, Individually;** | § | |
| **ALTON PORTLEY, Individually;** | § | |
| **and JOHN and JANE DOES 1 - 10** | § | |
| | § | |
| **Defendants** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

### I.
### INTRODUCTION

1.      This is a civil rights action under 42 U.S.C. § 1983 and state law claims arising from

events that occurred  during the confinement of Franklin Brooks Greathouse, Deceased, at the Bi-

State Justice Center Jail ("jail").   The jail is run by LaSalle Corrections, a private for-profit

correctional healthcare corporation.  Defendants caused the death of Franklin Brooks Greathouse

by  flagrantly violating his rights under both the Eighth and Fourteenth Amendments to the United

States Constitution.

2.      Defendants' unconstitutional actions include failing to monitor and treat his life-

threatening medical needs, failing to conduct  face to face observations of Greathouse as required

by state minimum jail standards, failing to transport Greathouse to the hospital, forcing him to endure extreme and pointless pain and suffering and causing his death, thereby robbing his surviving family members of their relationship with him.

3.      What happened to Franklin Brooks Greathouse was not an isolated incident. He is just one of approximately twelve detainees who have died at the jail since LaSalle became operator of the jail in February, 2013.   For years, LaSalle has been neglecting and abusing detainees, disregarding their fundamental constitutional rights, and engaging in other cruel and inhumane acts and practices.  See *Teresa Sabbie, Individually and as Personal Representative of  the Estate of Michael Sabbie, et al  vs. Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC, et al*, No. 5:17cv113, U.S. District Court, Eastern District of Texas, Texarkana Division; *Victoria Leigh, as Special Administrator of the Estate of Morgan Angerbauer, et al vs. Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC, et al*, No. 5:16CV129, U.S. District Court, Eastern District of Texas, Texarkana Division; *William Scott Jones vs. Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC and LaSalle Southwest Corrections, et al*, No. 5:19CV104, U.S. District Court, Eastern District of Texas, Texarkana Division; and *Mary Margaret Mathis, Individually and as Administrator of the Estate of Holly Barlow-Austin, et al vs. Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC and LaSalle Southwest Corrections, et al*, No. 5:20CV146, U.S. District Court, Eastern District of Texas, Texarkana Division.  Despite the needless deaths of multiple citizens, LaSalle refuses to fix the systemic constitutional deficiencies that keep causing them. So long as the corporation continues to profit, nothing changes. This case goes to the very heart of everything that's wrong with the privatization of America's county jails.

## II.
## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over the plaintiffs' civil rights claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

5.      This Court has personal jurisdiction over each of the named defendants because they either (1) reside in this judicial district, or (2) have sufficient minimum contacts in the State of Texas, and the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

6.      Venue is proper in this jurisdiction, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and/or because all defendants are subject to this Court's personal jurisdiction in this action.

## III.
## PARTIES

### A.      PLAINTIFF

7.      Plaintiff Miracle Ann Greathouse is a United States Citizen and resident of Little Rock, Arkansas.  She is the surviving daughter of the decedent, Franklin Brooks Greathouse.  She is also the court-appointed Administratrix of the Estate of Franklin Brooks Greathouse, which was duly formed under Texas state law.  She is a Plaintiff in her individual capacity and in her representative capacity as the Administratrix of her father's estate.  In her representative capacity, she is pursuing this action for the benefit of all eligible statutory beneficiaries, including herself.

**B.     DEFENDANTS**

**1.     The Municipal Defendants**

8.     Defendant Bowie County is a governmental entity and a political subdivision of the State of Texas and is a "person" for purposes of 42 U.S.C. § 1983.  Bowie County is responsible for operating the Bi-State Justice Center Jail, which sits on the border of Texas and Arkansas in Texarkana and is physically located on both sides of the state line.  Bowie County is also responsible for operating a related facility, known as the Annex, which sits on the Texas side of the border.  All Bi-State Jail and Annex detainees are entitled to constitutional protections under the Eighth and Fourteenth Amendments, including the right to constitutionally adequate medical care. Bowie County has a non-delegable duty to ensure that the Bi-State Jail and the Annex meet constitutional mandates.  Bowie County may be served via its County Judge, the Honorable Bobby L. Howell, at 710 James Bowie Drive, New Boston, Texas 75570.

9.     In February 2013, and as periodically renewed thereafter, Defendant Bowie County contracted with a private, for-profit correctional corporation, known as Southwestern Correctional, LLC, d/b/a LaSalle Corrections, LLC, to run all aspects of the Bi-State Jail and the Annex, including the provision of medical care to the jail's population of pretrial detainees and post-conviction prisoners. Pursuant to the contract, Bowie County is obligated to conduct monthly inspections of the Bi-State Jail. Although Defendant Bowie County sought to privatize the operation of its jail by delegating its final policy-making authority to Southwestern Correctional, LLC, it cannot contract-away its constitutional obligations and is liable for any unconstitutional corporate customs or policies that resulted in harm to any detainees and inmates confined in the jail.

10.     Defendant City of Texarkana, Texas is a governmental entity and a political subdivision of the State of Texas and is a "person" for purposes of 42 U.S.C. § 1983.  City of Texarkana, Texas shares responsibility over the Bi-State Jail with Bowie County and routinely arrests and brings detainees such as Franklin Brooks Greathouse to the Bi-State Jail for pretrial detention and post-conviction sentencing.  Texarkana, Texas has a non-delegable duty to ensure the Bi-State Jail satisfies its constitutional duties to citizens in its custody.  Said defendant may be served with process through Mayor Bob Bruggeman, 220 Texas Boulevard, Post Office Box 1967, Texarkana, Texas 75504.   City of Texarkana, Texas benefits from and is liable for any unconstitutional corporate customs or policies that resulted in harm to any detainee or inmate confined in the jail.

### 2.     The Corporate Defendants

11.     Defendant Southwestern Correctional, LLC, d/b/a LaSalle Corrections, LLC and LaSalle Southwest Corrections (hereinafter "LaSalle"), is a Texas Limited Liability Company doing business in this judicial district for purposes of profit.  LaSalle is considered a "person" under 42 U.S.C. § 1983.  LaSalle manages the day-to-day operations of the Bi-State Jail and the Annex. LaSalle is a final policymaker for Bowie County for purposes of providing jail-related services and meeting the needs of its pretrial detainees and convicted inmates.  According to the Texas Secretary of State, LaSalle's registered agent is Tim Kurpiewski at 26228 Ranch Road 12, Dripping Springs, Texas 78620.  At all material times, this defendant was acting under color of state law.  Regardless of its place of residence, the allegations against this defendant arise from its actions in the state of Texas and in this judicial district.

12.    Defendant LaSalle Management Company, LLC ("LaSalle Management") is a Louisiana Limited Liability Company doing business in this judicial district for the purpose of profit. LaSalle Management is considered a "person" under 42 U.S.C. § 1983 and is the parent company of LaSalle.  It is responsible for ensuring that its subsidiary meets its constitutional obligations in running the Bi-State Jail and the Annex.  Because LaSalle Management does not maintain a registered agent in the State of Texas, it may be properly served through the Texas Secretary of State via certified mail at Secretary of State, Post Office Box 12079, Austin, Texas 78711. The Texas Secretary of State is then requested to forward service to LaSalle Management's registered agent in Louisiana: William K. McConnell, 192 Bastille Lane, Suite 200, Ruston, Louisiana 71270.  At all material times, this defendant was acting under color of state law.  Regardless of its place of residence, the allegations against this defendant arise from its actions in the State of Texas and in this judicial district.

### 3.    The Individual Defendants

13.    Defendant James McCormick is a citizen of the State of Louisiana.  Said Defendant was, at all material times relevant to this Complaint, Warden of the Bi-State Jail and an employee of LaSalle and/or LaSalle management.  Defendant McCormick was responsible for overall operation of the jail, and the training and supervision of all jail employees at the Bi-State Jail.  Said Defendant may be served with process at 192 Bastille Lane, Suite 200, Ruston, Louisiana 71270. At all material times this defendant was acting under color of state law.

14.    Defendant Michelle Arnold is a citizen of the State of Texas.  Said Defendant was, at all material times relevant to this complaint an employee of LaSalle and/or LaSalle managment, and the nursing supervisor and health services administrator at the Bi-State Jail.  Defendant Arnold

was responsible for the training and supervision of medical staff at the jail, including LVN nurses assigned to work at the Bi-State Jail.  Said Defendant may be served with process at 1211 Lavaca Street, Texarkana, Texas 75503.  Said Defendant was, at all material times, acting under color of state law.

15.     Defendant Tiffany Hill is a United States citizen who, on information and belief resides in Texas.  Defendant Hill was an employee of Defendant LaSalle and was responsible for providing medical care to inmates and detainees, including Franklin Brooks Greathouse.  At all material times she was acting under color of state law.  Regardless of her place of residence, the allegations against this Defendant arise from her actions in the State of Texas and in this judicial district.

16.     Defendant Alton Portley is a United States citizen who, on information and belief resides in Texas.  Defendant Portley was an employee of Defendant LaSalle and was responsible for performing periodic face to face observations of detainees, including Franklin Brooks Greathouse, in compliance with state minimum jail standards.  At all material times he was acting under color of state law.  Regardless of his place of residence, the allegations against this Defendant arise from his actions in the State of Texas and in this judicial district.

17.     Defendants Jane Does 1 - 10 are female employees, agents or representatives of LaSalle who worked at the Bi-State Jail during the period when Greathouse was incarcerated. Plaintiff reserves the right to amend the Complaint to reflect the identities of Defendants Jane Does 1 - 10 as same become known.

18.     Defendants John Does 1 - 10 are male employees, agents or representatives of LaSalle who worked at the Bi-State Jail during the period when Greathouse was incarcerated.

Plaintiff reserves the right to amend the Complaint to reflect the identities of Defendants John Does 1 - 10 as same become known.

19.    Each Defendant, including John Does and Jane Does, were, at all material times operating under color of state law.

## IV.
## FACTUAL ALLEGATIONS

**A.    Facts Applicable to All Defendants**

20.    LaSalle Corrections, LaSalle Corrections, LLC and/or LaSalle Southwest are responsible for the day-to-day management of the Bi-State Jail pursuant to a contract with Texarkana, Arkansas, Bowie County, Texas and Texarkana, Texas.

21.    Pursuant to that contract LaSalle is required to incarcerate inmates and pre-trial detainees "pursuant to contracts between" LaSalle and Texarkana, Texas and/or Bowie County, Texas.

22.    LaSalle and LaSalle management are required to ensure that the detention of all inmates and pre-trial detainees at the Bi-State Jail is done in accordance with Texas Minimum Jail Standards, the United States Constitution, and all other applicable laws.

23.    LaSalle's duties under the contract specifically obligate LaSalle to provide:

"All operation and management services and all staffing, record keeping, programs, supervision, training, security, prisoner care, inmate services, and other services and tangible things needed to operate and manage the facility in compliance with the standards, regulations and requirements of the Texas Commission for Jail Standards, applicable federal or state law, and the requirements of the prisoner housing contracts with contracting authorities."

24.    Pursuant to that contract, LaSalle is required to carry liability insurance, with the contract specifically stating that any such insurance must include a "violation of civil rights"

endorsement.

25.     LaSalle is required, per the contract, to:

bind itself to defend, hold harmless and indemnify the county, county officials and employees and the agent and representative of the county from and against any and all claims, damages, losses, costs, assessments, penalties, attorney's fees and/or expenses of any kind that arise or result from, or allege to arise or result from, any negligent or wrongful act, or failure to act, or policy or custom of [LaSalle] or its officers, employees, agents, contractors and/or third parties.

26.     The contract further mandates that "all employees of [LaSalle] are considered employees of [LaSalle] for all purposes and are not employees of" Texarkana, Texas.

27.     LaSalle is also required under the contract to maintain a contract with a licensed medical doctor at all times relevant to this Complaint.

28.     Pursuant to LaSalle policies and procedures, all LaSalle employees are empowered to refer an inmate or detainee for outside emergency medical treatment and to summon an ambulance or EMTs. They are also required by the Fourteenth Amendment to the United States Constitution to do so.

29.     On March 10, 2019, Greathouse was arrested by Texarkana, Texas Police Department on a warrant issued out of Miller County, Arkansas.  He was transported to the jail and booked in at approximately 9:45 p.m.

30.     Greathouse was a chronic drinker and had been housed in the jail on numerous occasions as the result of alcohol related arrests.  Greathouse and his propensity to become intoxicated were well known to jail staffers.  It was obvious by his appearance and the smell of alcohol that Greathouse was intoxicated when he was booked into the jail.  The booking process was completed during the early morning hours of March 11, 2019.  Greathouse was house in Cell 1, L-Pod.

31.     At approximately 10:55 a.m. on the 11th, Greathouse complained that he was experiencing a seizure.  Greathouse in fact suffered from a seizure disorder, and seizures are a well known risk when a chronic drinker is withdrawing from the use of alcohol.  Greathouse also appeared to have injured his right arm, as he was holding it with his left hand.

32.     Defendant Hill, an LVN, spoke with Greathouse as he sat on the floor of the L-Pod day room.  Hill did not take Greathouse's vital signs.  She failed to utilize or complete mandatory nursing protocols that required her to do full medical assessments for detainees complaining of seizures, and for detainees experiencing alcohol withdrawal.  No treatment was provided to Greathouse.  LaSalle's written policies required that Hill complete the applicable protocol forms, sign and date them, then place them into Greathouse's medical file.

33.     Defendant Portley was a LaSalle correctional officer assigned to monitor detainees in F-Pod.  State Minimum Jail Standards require that each detainee in F-Pod receive a "face to face" observation by correctional officers at least every 60 minutes and record each observation.  Portley "pre-filled" his observation log to reflect regular face to face observations in F-Pod.  However, he did not conduct many of those checks in the hours leading up to Greathouse's death.  In other words, Portley falsified jail records to indicate all required checks had been made, when in fact they had not. Knowing falsification of jail records is a felony under Texas law.

34.     Greathouse remained in his cell throughout the day.  At approximately 7:00 p.m. Greathouse was found by his cell mate lying on the floor unresponsive.  Medical staff on duty responded and an ambulance was summoned.  CPR was performed by staff and ultimately the ambulance crew until and EKG revealed no signs of life.  Greathouse was declared dead at 7:40 p.m.

35.     Greathouse's body was transported to the Southwestern Institute of Forensic Sciences in Dallas, Texas for autopsy.  That autopsy found that Greathouse died as a result of a seizure disorder of unknown etiology.

36.     Following Greathouse's death the Texas Commission on Jail Standards conducted an inspection of the jail.  That inspection revealed that jail staff failed to meet minimum jail standards in their handling of Greathouse.  Specifically, at the time he was booked in at approximately 8:00 p.m. on March 10, 2019, jail staff completed a required Screening Form For Suicide and Medical/Mental/Developmental Impairments. Jail staff then conducted a CCQ (mental health query) and received a report that Greathouse had been a client of Sabine Valley Regional Mental Health Center.  State minimum jail standards require that this information caused the initiation of a magistrate notification within 12 hours.  This requirement was enacted as part of the Sandra Bland Act.  The jail staff failed to acknowledge Greathouse's previous mental health history and did not initiate the required magistrate notification.  Jail staff also failed to conduct a security risk assessment of Greathouse.  He should not have been housed until he was classified.

37.     The State Jail Commission inspection also involved review of video footage to determine whether jail staff conducted their required 60 minute face to face observations of Greathouse prior to his death.  It was determined that jail staff falsified their observation logs to reveal 8, 60 minute face to face observations that did not in fact occur.  Jail staff had once again falsified their observation logs to reflect observations that never happened in the hours leading up to Greathouse's death. LaSalle staff had done the same in the hours leading to the deaths of Michael Sabbie and Morgan Angerbauer.

**Additional Facts Applicable to LaSalle Defendants**

38.     The unconstitutional conduct in question was carried out in accordance with the official policies, procedures, practices, and customs of the LaSalle Defendants.

39.     The LaSalle Defendants engaged in and permitted to exist a pattern, practice or custom of unconstitutional conduct towards detainees and inmates with serious medical needs, including denying prescription medication and failing to secure medical care for such individuals. Before (and since) Greathouse's detention, there have been numerous instances in the Bi-State Jail (and in other correctional facilities managed by LaSalle) of inmates being denied medications and deprived of needed medical care by LaSalle and its agents or employees, resulting in disability and/or death.

40.     The LaSalle and individual Defendants were negligent in failing to properly monitor Greathouse, in failing to properly assess, treat and secure outside treatment for his serious medical condition, and in failing to transport Greathouse to a hospital for proper treatment of his condition.

41.     The LaSalle and supervisory Defendants (Arnold and McCormick) negligently failed to provide proper training to and supervision of laSalle correctional and medical staff, including Defendants Hill and Portley.

42.     The LaSalle Defendants negligently failed to provide proper training to and supervision of Defendants McCormick and Arnold in the appropriate manner of operating and overseeing a jail facility, as demonstrated by McCormick and Arnold's failure to ensure that Defendants Hill and Portley understood how to follow detainee observaton procedures and medical protocols so as to avoid another unnecessary death, especially after the deaths of Michael Sabbie and Morgan Angerbauer.

43.     The LaSalle Defendants, the individual Defendants and the Jane and John Doe Defendants had a duty to Franklin Greathouse to ensure that he received medical attention and that he was not exposed to undue risk of harm or injury.

44.     The breaches of Defendants' duties described above were actual and proximate causes of Greathouse's death, which occurred only because of the breaches of their duties by the Defendants.

45.     In the years leading up to Greathouse's death, there have been multiple instances in the Bi-State Jail of inmates being systematically denied constitutionally adequate medical care by LaSalle and its agents or employees.  Several of these instances involved high-profile lawsuits about which the corporate defendants were acutely aware, including those that were covered by local and national media outlets, putting company policymakers on notice that the Bi-State Jail and other LaSalle-run facilities were engaging in practices that endangered the lives of detainees and inmates.

46.     For example, in July 2015, 35 year old Michael Sabbie died in the Bi-State Jail because LaSalle ignored his serious medical needs and failed to take him to the hospital - despite his life-threatening medical symptoms.  LaSalle staff knew that he suffered from multiple chronic medical conditions, including hypertension, asthma, diabetes, and heart disease.  Nevertheless, they failed to give him medication, failed to check his blood pressure and blood sugar, failed to medically monitor him (even after assigning him to a medical observation cell), failed to conduct state-mandated face to face checks, failed to communicate his medical needs to qualified medical providers, and failed to summon or secure emergency medical care for him.

47.     In the lead up to Michael Sabbie's death, LaSalle nurses disregarded healthcare protocols, falsified records, and practiced medicine outside the scope of their licenses.  Despite his

objectively serious medical signs and symptoms, nurses accused him of faking his medical condition.  In addition, LaSalle guards fabricated observation logs - suggesting that they were checking on him when, in fact, they were not doing so - and failed to summon emergency medical care, even though he was plainly dying in front of them.  Poor training and inadequate staffing caused or contributed to his death.  In a lengthy, 169 - page report and recommendation to deny LaSalle's motion for summary judgement, United States Magistrate Judge Caroline M. Craven documented overwhelming evidence of systematic constitutional deficiencies at the Bi-State Jail. *See Sabbie v. Southwestern Corr., LLC*, No. 5:17cv113-RWS-CMC, 2019 U.S. Dist. LEXIS 214463 (E.D. Tex., Mar. 6, 2019).

48.     Even after Mr. Sabbie's death and the well-documented evidence of the systemic constitutional deficiencies that caused it, LaSalle did nothing to fix the problems.  The company took no steps to correct the nursing staff's failure to follow healthcare protocols and its failure to meet basic standards of care.  Nor did it implement any policy changes to ensure better care for inmates with chronic medical conditions.  Incredibly, LaSalle conducted no internal review into the death of Mr. Sabbie.  Nothing changed and, predictably, LaSalle's pattern of unconstitutional misconduct persisted.

49.     In July 2016, approximately one year after Michael Sabbie's death, a young woman named Morgan Angerbauer died in the Bi-State Jail because LaSalle personnel again failed to follow healthcare protocols, failed to conduct vital medical tests, failed to conduct state-mandated visual checks, failed to monitor her serious medical condition (despite assigning her to a medical observation cell), failed to give her medication for her chronic medical condition, and failed to take her to the hospital despite her plainly life-threatening medical needs. *See Leigh v. Southwest*

*Correctional, LLC.*, No. 5:17cv129.  Despite her objectively serious medical condition, LaSalle nurses accused her of faking it.  Once again, poor training, inadequate staffing, and other systemic constitutional deficiencies caused or contributed to this inmate's death.  As was the case with Michael Sabbie, LaSalle personnel again falsified records to suggest they were conducting state-mandated visual checks.  Following Morgan Angerbauer's death, LaSalle's unconstitutional acts and practices continued.

50.     The following year, in November 2017, an inmate named Juan Jose Cordova-Sanchez died in the Bi-State Jail.  While being restrained by LaSalle guards on the ground in a prone position, the inmate became unresponsive.  Despite this man's obvious and immediate need for emergency medical care, life-saving measures were not undertaken until it was too late to save his life.

51.     In April 2018, a detainee in the Bi-State Jail suffered a stroke.  Despite repeated pleas for help by other inmates, trustees, and family members of the stroke victim, LaSalle personnel, including on-duty nurses, disregarded healthcare protocols and failed to provide any treatment or call an ambulance for approximately 24 hours.  Still, LaSalle did nothing to correct the systemic constitutional deficiencies, and the company continued to maintain unconstitutional practices that put inmates and detainees at substantial risk of serious harm.

52.     Three months later, in July 2018, a Bi-State Jail inmate named William Jones was severely beaten and injured during his confinement.  See *Jones v. Southwest Correctional, LLC*, No. 5:19-CV-104.  Despite his life-threatening medical needs, LaSalle staff deprived him of medication, failed to follow healthcare protocols, failed to monitor his serious medical needs, failed to conduct face to face checks, and failed to arrange for hospital transport in a timely fashion.  Mr. Jones was

permanently disabled as a result of this conduct.

53.     Although Mr. Jones was put in a medical observation cell, LaSalle staff conducted virtually no medical monitoring of him.  In addition, despite knowing that he suffered from hypertension, LaSalle medical providers took no vital signs - even after he was gravely injured.  Nor did they make any effort to provide him with food or water, causing him to suffer from severe dehydration.  Instead of arranging for Mr. Jones to be taken to the hospital, LaSalle "released" him to his sister, who had him transported to the hospital by ambulance.  By that time he was near death's door.  He was placed on a ventilator and remained hospitalized for nearly a month.  Yet, rather than addressing the constitutional deficiencies that allowed this to happen, LaSalle sought to cover it up by destroying surveillance footage and other relevant information.

54.     Three months following the death of Franklin Greathouse detainee Michael Rodden committed suicide in the Bi-State Jail.  The post death inspection by the State Jail Commission revealed that yet again state mandated face to face observations were not made in the hours leading to the death of Michael Rodden.

55.     Approximately one month after the death of Greathouse Holly Barlow-Austin was booked into the jail on a misdemeanor probation revocation.  Austin, who had substance abuse issues, had checked into a rehab in the Dallas area.  She reported to probation upon her return to Bowie County.  Rather than commend her for getting clean they decided to revoke her misdemeanor probation because she left the county for treatment.  Austin was HIV positive and required several medications to be administered daily to keep her immune system regulated.  Austin's husband brought her medications to the jail and asked that they be administered to his wife.

56.     LaSalle staff failed to provide Austin with all of her medications and her condition deteriorated rapidly.   See *Mathis, et al vs. Southwestern Correctional, LLC*, No. 5:20-CV-146. Footage from the medical observation cell recorded Austin's last 45 hours in the jail, during which she is obviously blind, unable to find food or drink, and suffering from severe headaches.   She had developed meningitis as a result of being deprived of her medications.   Jail staff "released" Austin by transporting her to Wadley Regional Medical Center.   They failed to inform her husband, who ultimately learned his wife was dying in the hospital.   There was once again a complete breakdown in the provision of medical services resulting in yet another death of a citizen charged with a misdemeanor.

57.     In October, 2020 there were 2 additional deaths at the Bi-State Jail.   Charles Simmons was diagnosed with Covid-19 and prescribed therapeutic medications to treat the virus. Unfortunately, LaSalle contracts with a mail order pharmacy in Indiana and Mr. Simmons died before the medications were received at the jail.   On October 30, 2020, the Arkansas Department of Corrections terminated its contract with Bowie County because the jail had not established required guidelines to test and treat ADC detainees for Covid-related health problems.

58.     The second detainee to die at the jail in October, 2020 was 72 year old Raymond Cole.   A retiree with no criminal record, Cole was booked into the jail on misdemeanor animal cruelty charges.   Cole had been treated for a brain tumor several years prior to his arrest, and his pituitary gland had been surgically removed.   Accordingly, he required multiple doses of medication daily.   Cole's wife immediately brought his medications to the jail and pleaded with LaSalle nursing staffers to make sure he got his medication.   Cole did not receive his medication and was found non-responsive the following day.   He was transported to Wadley Regional Medical Center and

"released".  He died several days later.

59.     Cole's death is particularly disturbing since Bowie County, in the wake of Holly Barlow-Austin's death, required LaSalle to put in place a rigid procedure to address the very situation where a detainee's loved one brings medication to the jail.  Either LaSalle never put such a procedure in place or chose not to follow it, resulting in the death of yet another person charged with a misdemeanor before they reached trial.

60.     On November 9, 2020 the LaSalle Defendants informed Bowie County that they would not be renewing their contract to operate the jail, effective February 13, 2021.

61.     The unconstitutional policies, practices described above have not been limited to the Bi-State Jail and have caused unnecessary suffering and deaths in multiple other LaSalle - run Texas facilities.  For example, in September 2013, an inmate named Greg McElvy died in the Johnson County Jail, which is operated by LaSalle.  Over the course of three days, this inmate exhibited alarming symptoms - he was not eating or drinking; he was vomiting; he lost control of his bodily functions; he was urinating and defecating on himself; and he was suffering from severe respiratory distress. He also had abnormal blood pressure.  He repeatedly told jail staff that he was dying and begged for medical attention.  Multiple inmates, and one guard, tried to get the LaSalle medical staff to help. However, despite his life-threatening medical needs, he was neither taken to the hospital nor seen by a medical doctor.  LaSalle nurses disregarded basic healthcare protocols.  By the end of those three days, he was found unresponsive, in a pool of vomit.  He died of untreated acute bronchopneumonia and asthmatic complications.

62.     In May 2015, another inmate, Ronald Beesley, died in LaSalle's Johnson County Jail - after complaining of chest pain and experiencing swelling in his limbs.  His wife visited him the day

before his death.  After observing that he could barely walk and was struggling to talk, she and another family member contacted a LaSalle jail official and expressed concern that he would die without immediate medical attention.  However, LaSalle staff did not take him to the hospital or even have him evaluated by a medical doctor.  Consequently, Mr. Beesley ended up dying in jail the following night from an infection in his chest that could have been treated with simple antibiotics. Disregarding healthcare protocols, failing to monitor his medical needs, ignoring his life-threatening medical condition, and refusing to take him to the hospital led directly to Mr. Beesley's unnecessary death.

63.      In November 2015, an inmate named Michael Martinez was found hanging from the ceiling of his cell in the LaSalle-run Jack Harwell Detention Center in Waco, Texas.  An investigation revealed that no one had checked on Mr. Martinez in the three hours leading up to when his body was discovered - in violation of state correctional standards.  Another inmate, Kristian Culver, died in the same facility seven months later, in May, 2016, under similar circumstances. Once again, an investigation revealed that LaSalle guards were not conducting their state-mandated face to face checks.  Poor training and inadequate staffing also caused or contributed to these deaths. At least 1 guard admitted that the company had instructed jail staff to falsify inmate observation logs.  Similar testimony was elicited in the Michael Sabbie litigation.

64.      In November 2017, an inmate named Denay Lauren Birnie died in LaSalle's Parker County Detention Center of a drug - related overdose.  Despite her serious medical needs, she was not seen by a medical doctor or taken to the hospital.  As with so many others, LaSalle staff failed to monitor her medical condition.  An investigation by the Texas Rangers concluded that falsified observation logs  played a role in her death.  The investigation also revealed that guards in the

Parker County Detention Center did not conduct their regular checks unless they heard something out of the ordinary going on in a cell.

65.     In December of 2018, an inmate named Andrew DeBusk died in the same facility after being restrained by LaSalle guards.  Even when he was non-responsive and his face had turned purple and gray, LaSalle guards and a LaSalle nurse ignored his emergency medical needs until it was too late to save his life.

66.     In the years leading up to the death of Greathouse, LaSalle-run facilities in Texas routinely failed state inspections.  According to Brandon Wood, the Executive Director of the Texas Commission on Jail Standards, LaSalle had "continual noncompliance issues" in Texas, more than other jail operators in the state.   In fact, LaSalle-run jails in Texas have been on the state's noncompliance list every year since 2015.

67.     LaSalle facilities have also come under scrutiny by state lawmakers for hiring a disproportionate number of "temporarily licensed" corrections officers - taking advantage of a loophole that allowed correctional facilities to hire and staff their jails for up to one year with guards who hadn't gone through the basic correctional training academy.  LaSalle did this purely for monetary reasons and without regard to inmate health and welfare.  Hiring these untrained guards was cheaper than hiring experienced guards or paying to send them to the corrections academy for their basic training.  The Bi-State Jail actively participated in this reckless, profit-driven scheme.  Similarly, LaSalle underpays its correctional officers, who make $6.00 to $7.00 dollars less per hour than correctional officers employed by the Texas Department of Criminal Justice.  Again, it's all about placing profit over people.

68.     Not only did LaSalle hire a disproportionate number of these temporarily licensed jailers, but it failed to give them state-mandated on-the-job training.  Between 2015 and 2019, LaSalle guards engaged in a persistent pattern of falsifying training records.  This occurred in multiple LaSalle-run facilities, including the Bi-State Jail.  In the Michael Sabbie case, for example, guards testified that LaSalle literally instructed corrections officers to fill out training records indicating that their on-the-job training had been completed, when it had not even begun.  Similarly, the Texas Commission on Law Enforcement Standards secured more than a dozen sworn statements from guards at LaSalle's Parker County Detention Center confirming that they did not receive training that the company reported to the commission.  Guards from other LaSalle-run jails have given similar accounts to investigative journalists.

69.     In the years leading up to the death of Greathouse, LaSalle had a well-documented practice of failing to adequately train their security personnel on recognizing and responding to the serious medical needs of inmates and detainees.  The need for this training was obvious because LaSalle often hired detention staff with little or no corrections experience, and it was foreseeable that the lack of such training would cause harm to inmates and detainees.  In fact, the inadequate training of LaSalle jail guards caused or contributed to multiple bad outcomes in the Bi-State Jail prior to Greathouse's death.  In litigation resulting from the deaths of Michael Sabbie and Morgan Angerbauer, multiple corrections officers testified that LaSalle did not even train them that they had a constitutional duty to summon medical care for inmates with serious medical needs.  These same training deficiencies played a substantial role in Mr. Greathouse's unnecessary suffering and death.

70.     The inadequate training was not limited to jail guards.  LaSalle also failed to train its jail nursing staff on how to recognize and respond to the serious medical needs of inmates, follow

healthcare protocols, monitor inmates in medical observation cells, conduct medical examinations in accordance with basic standards of care, notify qualified providers of abnormal findings, consult with and involve medical doctors in patient care, correctly maintain and review medical charts, and contact emergency services in a timely fashion.  The need for this training was obvious, particularly in the Bi-State Jail, because there is no doctor on site and because the jail utilizes lower-level nurses (LVNs and LPNs) in inmate-patient care.  Indeed, despite their limited scope of license, these LVNs/LPNs are often the only ones providing healthcare at the Bi-State Jail.

71.     It was foreseeable that the training deficiencies outlined above would cause harm to inmates and detainees, such as Franklin Brooks Greathouse.  In fact, just as the inadequate training of jail guards caused or contributed to multiple bad outcomes in the Bi-State Jail prior to Mr. Greathouse's death, so, too, did the inadequate training of LaSalle LPNs/LVNs.  The Sabbie / Angerbauer litigations resulted in several LaSalle LVNs/LPNs testifying that they received little to no training and were not even aware of the corporation's healthcare protocols.  These same training deficiencies played a substantial role in Mr. Greathouse's unnecessary suffering and death.

72.     In addition to its inadequate training, the practice of insufficient staffing has been a well-documented and persistent problem at LaSalle-run Texas jails.  In fact, staffing shortages led to several of the constitutionally deficient practices outlined above.  For example, one of the reasons why LaSalle guards routinely fail to monitor detainees and conduct their state-mandated checks is because there are not enough of them to do the job.  Likewise, staffing shortages play a role in nurses failing to check vital signs and disregarding time-consuming medical protocols.  It is also one of the reasons why LaSalle fails to take inmates to the hospital, even when they are suffering from life-threatening medical conditions.  When an inmate is taken to the hospital, it requires a guard to

be posted by the inmate's room.  If the jail has staffing shortages, it cannot afford to lose the manpower it would lose if an inmate is hospitalized.  Insufficient staffing practices at the Bi-State Jail and other LaSalle-run facilities caused harm to multiple inmates and detainees in the years leading up to Mr. Greathouse's confinement, and such practices played a substantial role in his suffering and death.

73.    One of the most glaring systemic deficiencies is LaSalle's medical observation policy, which is plainly unconstitutional as implemented.  When LaSalle identifies an inmate with serious medical needs, the corporate policy is to place the inmate in a medical observation cell.  In theory, this is appropriate.  However, when LaSalle places an inmate on medical observation, zero medical monitoring takes place.  Instead, corrections officers with no medical training or experience are put in charge of monitoring them.  And their so-called medical monitoring consists of guards quickly peeking in the cells - often while walking by without stopping.  They are not trained to look for abnormal signs or symptoms, ask questions of the inmates, carefully examine them, or document any observations.  Instead, they are told not to summon care so long as the inmates were alive and breathing.  And because of LaSalle's persistent understaffing problems, guards routinely fail to conduct even these perfunctory checks.  LaSalle's "medical observation" policy led to disastrous results in the case of Michael Sabbie, Morgan Angerbauer, William Jones, and others.  Despite these negative outcomes, the company made no effort to correct this plainly unconstitutional policy, and, predictably, Franklin Brooks Greathouse became its latest victim.

74.    LaSalle also has a longstanding practice of denying medication and medical care to sick or injured inmates based on their alleged "refusal" to receive the medicine or care.  Yet, in many instances, the inmates are too hurt or ill to physically get up to receive the medication or

medical care.  Moreover, LaSalle has a longstanding practice and corporate culture of treating inmates as "fakers," accusing them of feigning illness or distress when they report medical problems, and assuming all inmates fit into this description - even when they are displaying objectively abnormal vital signs and symptoms.  Each of these longstanding practices predictably caused harm to inmates in the years leading up to Franklin Brooks Greathouse's confinement, and each of them played a substantial role in his suffering and death.

75.     Additionally, LaSalle-run facilities have a longstanding practice of poor medical record-keeping and miscommunication among jail medical providers.  This has been a major problem at the Bi-State Jail - where medical records are routinely lost, and communication breakdowns are commonplace.  Lower-level nurses often fail to convey important information about patient-inmate care needs to one another and to higher-level providers.  These practices predictably put inmates at substantial risk of serious harm.  They, in fact, contributed to negative outcomes for multiple inmates, including Michael Sabbie, Morgan Angerbauer, and William Jones, and they played a substantial role in Mr. Greathouse's constitutionally deficient care.

76.     As was the case with other inmates who died in LaSalle-run facilities, the failure to secure needed medical care for Mr. Greathouse was motivated, in part, by constitutionally impermissible profit-driven reasons.  The Corporate Defendants had a practice of submitting unrealistically low bids to get jail contracts.  After securing the contracts, they would then cut costs, or keep their budgets unrealistically low, to make money.  This included hiring inexperienced jail guards and lower-level nurses and failing to invest in adequate training.  It also included spending inadequate amounts on correctional medical care and habitually understaffing its facilities.  It was foreseeable that LaSalle's inadequate training, insufficient medical spending, and understaffing

would cause harm to inmates and detainees in need of medical care.  In fact, these reckless profit-driven practices resulted in substantial harm to multiple inmates in the years leading up to Mr. Greathouse's confinement.  And these same unconstitutional practices caused his unnecessary suffering and death.

77.      The Corporate Defendants had a duty to treat Mr. Greathouse in accordance with the applicable constitutional standards of medical and correctional care.  The Corporate Defendants breached those duties, and Mr. Greathouse's damages, including his pain and suffering and his death, were the direct and foreseeable result of the unconstitutional actions and inactions alleged herein.

78.      The corporate policies, practices, and customs described above were the moving force behind Mr. Greathouse's suffering and death and the constitutional violations alleged herein.  The Corporate Defendants also ratified the unconstitutional conduct of its employees and agents in connection with the death of Mr. Greathouse.  LaSalle policymakers were aware of his condition and participated in the decision not to take him to the hospital until it was too late.

79.      All acts and omissions committed by the Corporate Defendants were committed with intent, malice, deliberate indifference, and/or with reckless disregard for Mr. Greathouse's federal constitutional rights.  And the acts of and omissions of the Corporate Defendants caused the damages alleged herein.

80.      Moreover, the conditions in which LaSalle confined Franklin Brooks Greathouse were inhumane in the extreme, beyond all bounds of human decency, and in flagrant violation of his constitutional rights.  Housing him in such deplorable conditions was arbitrary, purposeless, and bore no reasonable relationship to any legitimate penological or government objective.

**B.**    **Additional Facts Applicable to Bowie County**

81.    Defendant Bowie County delegated its final policy-making authority to the Corporate Defendants.   Despite this, Bowie County had a continuing duty to ensure that its corporate policymakers were meeting the constitutional needs of its detainees.   Bowie County adopted and ratified the policies, customs, and practices of the Corporate Defendants as its own.   As such, Defendant Bowie County is liable for any unconstitutional corporate policies, customs, or practices that resulted in harm to any detainees and inmates confined in the jail, including those that caused the suffering and death of Franklin Brooks Greathouse.   It was foreseeable that such policies, customs, and practices would put the lives of Bi-State Jail and detainees at risk, and such policies and customs caused and/or substantially contributed to the suffering and death of Mr. Greathouse.

82.    Bowie County is also liable for failing to regularly inspect the Bi-State Jail to ensure that LaSalle was meeting its constitutional obligations.   Given the highly publicized evidence of how inmates were being treated, including those who died in the years leading up to 2019, Bowie County was on notice that LaSalle was not complying with minimal constitutional standards.   It had a constitutional duty to remedy the situation, and it breached its duty.

**V.**
**CAUSES OF ACTION**

**A.**    **Against the Corporate Defendants**

1. <u>42 U.S.C. 1983</u>

83.    Based on the allegations in this complaint, the Corporate Defendants (LaSalle and LaSalle Management) are liable under 42 U.S.C. § 1983 for violating the plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution.   This includes depriving Franklin Brooks Greathouse of his constitutional rights to adequate medical care and to be housed

in humane conditions of confinement, as well as depriving his surviving family members of their constitutional liberty interest in their relationship and their society and companionship with him.

### 2. Wrongful Death and Survival

84.     Based on the allegations in this complaint, the corporate Defendants are liable for tortiously causing the death and pre-death pain and suffering of Franklin Greathouse by violating the applicable correctional and medical standards of care.

**B.      Against Bowie County and The City of Texarkana, Texas**

85.     Based on the allegations in this complaint, Bowie County and the City of Texarkana, Texas are liable under 42 U.S.C. § 1983 for violating the plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution.  This includes depriving Franklin Brooks Greathouse of his constitutional rights to adequate medical care and to be housed in humane conditions of confinement, as well as depriving his surviving family members of their constitutional liberty interest in their relationship and their society and companionship with him.

**C.      Against the Individual Defendants**

### 1. 28 U.S.C. 1983

86.     Based on the allegations in this complaint, all individual defendants are liable under 42 U.S.C. § 1983 for violating the plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution.  This includes depriving Franklin Brooks Greathouse of his constitutional rights to adequate medical care and monitoring, and to be housed in humane conditions of confinement, as well as depriving his surviving family members of their constitutional liberty interest in their relationship and their society and companionship with him.

87.     Individual liability under 42 U.S.C. § 1983 also extends to the supervisory defendants identified herein, including Defendants McCormick and Arnold for their failure to oversee their subordinates and ensure compliance with correctional standards of care as described in this complaint.

88.     All acts and omissions committed by the Individual Defendants were committed with intent, malice, deliberate indifference, and/or with reckless disregard for Mr. Greathouse's federal constitutional rights.  And the acts of and omissions of the Individual Defendants caused the damages alleged herein.

89.     Based on the allegations set forth in this complaint, the individual Defendants are liable for tortiously causing the death and pre-death pain and suffering of Franklin Greathouse by violatin ghe applicable correctional and medical standards of care.

## VI.
## JURY DEMAND

90.     Plaintiff hereby demands a trial by jury.

## VII.
## PRAYER FOR RELIEF

Plaintiff asks that the Court award them the following relief:

A.     All available compensatory damages, including, but not limited to: damages to Franklin Brooks Greathouse for his mental and physical pain and suffering and the loss of the value of his life; medical and burial expenses; damages to his daughter and siblings, for their loss of society and companionship, loss of love and affection, loss of financial support, loss of household services, and loss of care, comfort, and guidance; mental and emotional anguish; and all compensatory damages available under federal law;

B.     Punitive damages against all individual and corporate defendants;

C.      Attorneys' fees and costs;

D.      Prejudgment interest as appropriate; and

E.      Any such other relief that this Court deems just and equitable.

January 11, 2021


                                    Respectfully submitted,

                                    /s/ W. David Carter
                                    _____
                                    W. David Carter
                                    Texas State Bar No. 03932780
                                    MERCY ⋆ CARTER, L.L.P.
                                    1724 Galleria Oaks Drive
                                    Texarkana, Texas 75503
                                    Telephone: (903) 794-9419
                                    Fax.: (903) 794-1268
                                    wdcarter@texarkanalawyers.com


                                    ATTORNEYS FOR PLAINTIFF
                                    MIRACLE ANN GREATHOUSE, Individually and
                                    as Administratrix of the ESTATE OF
                                    FRANKLIN BROOKS GREATHOUSE, DECEASED